UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MELVIN P. LITTERAL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-090-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RYAN WELLS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Defendants Scott Evely, Edwin Williams, John Toler, Caleb Croney, Logan Anderson, Brandon Helm, Tyler Farrell, Shannon Penegor, Alexander May, Steven Wiggins, Patrick Murray, Christopher Beard, James McCullough, Connor Sands, Morgan Kelsey, Daniel Christian, and Gregory Gerton (collectively "the moving individual defendants") seek dismissal of the claims asserted against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Record No. 18 at 1] Alternatively, they move to dismiss the punitive damages claims.  *Id.*  Further, the moving individual defendants assert qualified immunity regarding Plaintiff Melvin Litteral's Section 1983 claims and a qualified official immunity defense for his Kentucky law claims.  *Id.*

Following review, the undersigned concludes that the moving individual defendants have failed to meet their burden under Rule 12(b)(6) and that additional discovery is necessary before the applicability of qualified immunity can be resolved.

Defendant Lexington Fayette Urban County Government ("LFUCG") also has moved to dismiss Litteral's claims against it for failure to state a claim.  [Record No. 18] That motion

- 1 -

will be granted in part, and denied in part, consistent with this Memorandum Opinion and Order.

**I.**

Melvin Litteral was inside his home on March 28, 2024, in Lexington, Kentucky, when several Lexington Police officers arrived.  [Record No. 1 at ¶ 8] Litteral opened the door in response to a knock, immediately saw the officers, and closed his door.  *Id.* at ¶ 9.  However, officers forced the door partially open, using their feet and hands to hold it ajar.  *Id.* at ¶ 10.  Police continued asking Litteral to step outside to speak with them, but he refused.  *Id.* at ¶ 13.  Officers never stated that they possessed a warrant.  And in fact, they did not have one.  *Id.*  Litteral continued to prevent the warrantless entry from inside his residence by putting his body against the door and telling the police to leave because they did not have a warrant.  *Id.* at ¶¶ 11.  He claims there was no indication of exigent circumstances, attempts to destroy or conceal evidence, or any ongoing criminal activity.  *Id.* at ¶ 12.

Additional officers began physically assisting with the attempts to enter the plaintiff's home.  [*See* Record No. 1 at ¶ 8, pp. 4, 6.] After several minutes with officers present, Defendant Ryan Wells announced that he would tase Litteral.  *Id.* at ¶¶ 14–15.  And no officer attempted to stop him.  *Id.* at ¶¶ 34–36.  Wells held his taser through the opening of the door and tased Litteral in his abdomen and forearm.  *Id.* at ¶¶ 15, 31.

Photos taken from body camera footage depict that the officers were able to gain entry into Litteral's home after he was tased.  [Record No. 1 at p. 9] He was then "aggressively" grabbed, "forcefully" restrained, and placed in handcuffs all before being told that he was

under arrest. [1] *Id.* at ¶ 27.  Despite never being told he was under arrest, Wells "falsely charged" Litteral with resisting arrest.  *Id.* at ¶¶ 1, 18. That charge was later dismissed with no stipulation regarding probable cause.  [Record No. 15]

Although numerous officers witnessed the tasing of Litteral through his front door and the subsequent warrantless entry into his home, he contends that no one reported the incident to his or her supervisor.  [Record No. 1 at ¶ 37] LFUCG was allegedly aware of the officers' actions but failed or refused to recognize or address the violation of Litteral's civil rights.  *Id.* at ¶ 39.  Litteral insists that LFUCG did not take corrective action through disciplinary or training measures following this incident.  *Id.* at ¶ 40.

Litteral brings this action against Defendants Ryan Wells, Rachael Curnutte, Scott Evely, Edwin Williams, John Toler, Caleb Croney, Logan Anderson, Brandon Helm, Tyler Farrell, Shannon Penegor, Alexander May, Steven Wiggins, Patrick Murray, Christopher Beard, James McCullough, Connor Sands, Morgan Kelsey, Daniel Christian, and Gregory Gerton in their individual capacities and against the Lexington Fayette Urban County Government. [Record No. 1] He asserts the following claims: unreasonable search and seizure in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Count I); excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Count II); assault and battery in violation of Kentucky law (Count III); and failure to intervene, and conspiracy to conceal civil rights violations pursuant to 42 U.S.C. § 1983 (Count IV).  *Id.*  Litteral seeks compensatory damages, punitive damages, and a permanent injunction to require LFUCG to

---

[1]    The arrest stemmed from events that were alleged to have occurred earlier that evening. [Record No. 1 at ¶ 13]

"implement training and supervision measures to ensure no future similar constitutional violations occur." *Id.* at pp. 12–13.

Previously, the individual defendants and LFUCG moved to dismiss the claims against them under Rule 12(b)(6). [Record Nos. 4 and 8] The Court denied those motions without prejudice and entered a stay until the underlying criminal action in state court was resolved. [Record No. 11] On February 19, 2026, the stay was lifted because the plaintiff's resisting arrest charge was dismissed by the Fayette Circuit Court with no stipulation of probable cause for his arrest. [Record No. 15] The defendants then renewed their motions to dismiss. [Record Nos. 17 and 18]

LFUCG asserts that Litteral fails to state a viable claim for municipal liability and that he cannot bring state tort claims against it because it is cloaked with sovereign immunity. [Record No. 17] Unlike the first motion to dismiss, Defendants Wells and Curnutte are not parties to the moving individual defendants' renewed motion to dismiss. [*Compare* Record No. 8 *with* Record No. 18.]

## II.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556).

And when reviewing a motion under Rule 12(b)(6), the court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the

- 4 -

allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990).

### III.

### Moving Individual Defendants' Motion

Except for Wells and Curnutte, the individual defendants move to dismiss the claims against them. [Record No. 18 at 1, 3] Alternatively, they seek dismissal of Litteral's punitive damages claims. *Id.* at 1. At the outset, the moving individual defendants challenge the adequacy of the Complaint because it "refers to them collectively, without citing their specific conduct." *Id.* at 4. They further claim that Litteral does not delineate between which individual defendants are "supervisors or co-workers." *Id.* at 5. Next, they insist that merely being present at the scene is insufficient to establish liability. *Id.* at 6 (citing *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)). Finally, the moving individual defendants argue that federal qualified immunity and Kentucky qualified official immunity bar Litteral's claims. *Id.* at 6–10.

Litteral argues that the individual defendants' motion attempts to "falsely characterize the Complaint as alleging their 'mere presence' at the scene." [Record No. 25 at 3] Contrary to that characterization, he insists that he pleads and provides body camera footage stills depicting their concerted action "to physically breach [his] door and effectuate his unlawful arrest." *Id.* Additionally, he alleges failure to intervene claims against the officers who heard Wells' threat to tase Litteral but did not attempt this action. *Id.*

Concerning punitive damages, Litteral maintains that he has sufficiently pled misconduct that is outrageous. [Record No. 25 at 9] Specifically, he claims that roughly 19 officers arrived at his residence without a warrant and entered his home by tasing him and then

breaching his door over his objection. *Id.* at 9–11. Finally, he insists that qualified immunity is not appropriate because the individual defendants' actions violated a clearly established right that "officers may not force entry into a residence to effectuate arrest without a warrant or exigent circumstances" and that they did not act in good faith. [Record No. 25 at 11]

**Identifying Defendants by Name, Conduct, and Supervisory Authority:** While Litteral does not specifically name who "was present at his home, who was present in his doorway, who pushed the door, who observed the tasing, or who entered his home afterwards," he provides photo stills of those involved. [Record Nos. 1 and 27 at 2] Contrary to the moving individual defendants' argument, the photos and textual allegations provide "'adequate notice of the claims against them and the grounds upon which each claim rests.'" [Record No. 27 at 2 (citing Fed. R. Civ. P. 8(a)(2).]

If anything, the photo stills provide greater notice than textual allegations alone would because the defendants can observe their presence and conduct during the incident. Thus, their reliance on *Marcilis v. Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012), and *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008), for the proposition that a complaint must allege with particularity what each defendant did to violate the plaintiff's constitutional rights, is misplaced.[2] *See id.*

---

[2]     The moving individual defendants argue for the first time in their reply that the conspiracy claim lacks "specificity whether there was an agreement or concerted action by any of the Moving Defendants to violate a constitutional right." [Record No. 27 at 4] Previously, they halfheartedly argued that the conspiracy claim failed to provide "factual support showing the *role* of each defendant." [Record No. 18 at 4 (emphasis added).] Courts "do not usually entertain new arguments raised for the first time in a reply brief." *United States v. Galaviz*, 645 F.3d 347, 362 (6th Cir. 2011); *Benham v. Comm'r of Internal Revenue*, No. 19-1938, 2021 WL 320765, at *3 (6th Cir. Jan. 8, 2021) (quoting *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held . . . that arguments made . . . for the first time in a reply brief are waived.")). Thus, the undersigned declines to address that argument.

The significance of the plaintiff identifying which individual defendants are "supervisors or co-workers" is unclear. [*See* Record No. 18 at 5.] In any event, at this stage of the proceedings, the test is on the sufficiency of the Complaint, not its accuracy. *See Anderson v. City of E. Cleveland*, No. 1:12 CV 3020, 2013 WL 1910410, at *3 (N.D. Ohio May 8, 2013), *aff'd* (Apr. 25, 2014) (citing *Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993)).

**Prescence at Scene:** Litteral does not allege mere presence at the scene against the individual moving defendants. Instead, he claims that they acted together and forced a warrantless entry to his home, failed to intervene when Wells announced that he would use his taser, and conspired together to conceal the violation of his civil rights. At this juncture, this sufficiently alleges more than mere presence at the scene.

**Qualified Immunity:** Dismissal is proper when "the validity of a qualified immunity defense" is "apparent from the face of the complaint." *Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 836 (6th Cir. 2025) (quoting *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021)). An official "is entitled to qualified immunity from a § 1983 suit if either (1) his [or her] conduct did not violate a constitutional right or (2) that right was not clearly established at the time of the conduct." *Id.* (citing *Crawford*, 15 F.4th at 760). If either one is lacking, "the court need not address the other and can dismiss the plaintiff's claim based on the defendant's immunity." *Id.* (citing *Crawford*, 15 F.4th at 760).

Kentucky's qualified official immunity doctrine protects officers from liability for the negligent performance of: "(1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). The good faith component asks whether the official's conduct was objectively

- 7 -

unreasonable, taken willfully or maliciously with intent to harm the plaintiff, or driven by a corrupt motive. *Id.* at 523. "'[B]ad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position[.]" *Id.* (citation omitted).

The moving individual defendants argues that "the complaint establishes [this] defense." [Record No. 18 at 7 (citing *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762–63 (6th Cir. 2020)).] They assert that the generalized allegations in the Complaint fail to demonstrate which defendants "used force, failed to intervene, or otherwise committed a clearly established constitutional violation." *Id.* Finally, they claim "[e]ven accepting the pleaded facts as true, those allegations to not demonstrate that any of the defendants violated a clearly established constitutional right." *Id*

Conversely, Litteral insists this argument "borders on frivolous" because "[t]he law has been explicitly settled for decades that law enforcement officers may not force entry into a residence to effectuate an arrest without a warrant or exigent circumstances." [Record No. 25 at 11] He references case law that declare warrantless home entries, absent exigent circumstances, violative of both the United States and Kentucky Constitutions. *See id.* For this reason, Litteral concludes that "[n]o reasonable officer could believe that physically forcing open a citizen's door and deploying a Taser through the crack to effectuate a non-exigent, warrantless arrest is lawful conduct." *Id.* at 12. And because violating a known constitutional right and concealing that violation both are indicative of bad faith, qualified immunity is not appropriate. *Id.* That said, Litteral concedes that additional discovery might expose that some individual defendants may be entitled to qualified immunity. *Id.* at 12–13.

As discussed previously, the fact that the Complaint provides photo stills depicting the defendants' conduct, rather than identifying each by name, provides the defendants sufficient notice of the claims against them.  The use of phrases like "Defendant officers at the scene," along with photos of officers at the scene do not automatically entitle the defendants to qualified immunity.  [*See e.g.*, Record No 1 at ¶ 34.] Here, the moving defendants' entitlement to a qualified immunity defense under federal or state law is not apparent from the face of the Complaint.  *Martinez*, 142 F.4th at 836.  Litteral alleges facts that "make out a violation of a constitutional right."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  He claims that officers forced a warrantless entry into his home by tasing him.  The right at issue (i.e., to be free from unreasonable seizures and warrantless entries in one's home) was clearly established at the time of the alleged conduct.  So too for the right to be free from excessive force within one's own home when refusing a warrantless entry by officers.

At this stage, the Court cannot ascertain whether the officials acted in good faith concerning the alleged assault and battery, whether exigent circumstances existed that justified the warrantless entry, or whether the amount of force used was excessive.  Here, because relevant issues of fact remain outstanding, the Court, cannot "'determine in its reasoned judgment'" that qualified immunity applies from the face of the Complaint "'without further discovery.'"  *Smith v. Miami Valley Hosp.*, -- F.4th --, No. 24-3983, 2026 WL 1067289, at *1 (6th Cir. Apr. 20, 2026) (quoting *Everson v. Leis*, 556 F.3d 484, 492–93 (6th Cir. 2009)).

**Punitive Damages:** For Section 1983 claims, punitive damages are available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Wesley v. Campbell*, 864 F.3d 433, 442–43 (6th Cir. 2017) (internal quotations omitted) (quoting *King*

*v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983))). "'The allowance of such damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent.'" *Id.* at 443 (quoting *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986)).

"The Kentucky Supreme Court has held that to impose punitive damages, the conduct at issue must amount to at least common law 'gross negligence.'" *M.T. v. Saum*, 3 F. Supp. 3d 617, 623 (W.D. Ky. 2014) (quoting *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998)). This includes conduct that demonstrates a "'wanton or reckless disregard for the lives, safety or property of others.'" *Id.* (citation modified) (quoting *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389–90 (Ky. 1985)).

The moving individual defendants insist that Litteral's claim for punitive damages is insufficiently pled. [Record No. 18 at 10] They contend that he "does not allege with specificity that any of the Defendants acted with an evil motive or that their conduct involved reckless indifference." *Id.* They further insist that allegations of unconstitutional conduct are not enough to support a punitive damages claim. *Id.* Litteral disagrees. He maintains that the conduct as pled is sufficiently outrageous. [Record No. 25 at 9] In support, he references allegations that a "gang" of officers arrived at his residence without a warrant and forced their way into his home by tasing him twice. *Id.* at 9–11. Those allegations, as pled, suffice for now.

Assuming the truth of the Complaint, forcing a warrantless entry by tasing a home's occupant demonstrates "a wanton or reckless disregard for the lives, safety or property of others." *M.T.*, 3 F. Supp. 3d at 623. The same is true for the Section 1983 claims, taken in the

light most favorable to Litteral, the conduct alleged demonstrates a "reckless or callous indifference to the federally protected rights of others." *Wesley*, 864 F.3d at 442–43.

### LFUCG's Motion

LFUCG moves to dismiss Litteral's *Monell*, conspiracy, and state-law claims against it for failure to state a claim. [Record No. 17] It argues that the Complaint fails to make out a *Monell* claim because it does not identify a policy, custom, or practice that was the moving force behind" the constitutional violation. *Id.* at 4. And to the extent that Litteral attempts to bring a single-incident *Monell* claim, he fails to allege how "this case falls within the 'narrow range of circumstances' where a single violation might demonstrate a deliberate disregard for an individual's constitutional rights." *Id.* at 5.

LFUCG insists that Litteral fails to "include factual details that [it] participated in a single coordinated action with any individual defendant" sufficient to support his conspiracy claim. *Id.* at 6. Finally, it argues that sovereign immunity prevents him from bringing state-law tort claims against the city government. *Id.*

Litteral agrees that his state-law claim against LFUCG should be dismissed under existing law. [Record No. 24 at 11] However, he insists that his *Monell* and conspiracy claims are adequately pled. *See generally id.* But if the Court finds otherwise, Litteral seeks ten days within which to tender an "amended complaint setting forth in greater detail the deficiencies apparent on the part of [LFUCG]." *Id.* at 3.

For his *Monell* claim, Litteral insists that the Complaint demonstrates a failure to train or supervise which amounts to deliberate indifference. Specifically, he argues

> nearly 19 officers . . . collectively converged on a home, participated in a warrantless entry, failed to intercede during an unlawful tasing, and subsequently failed to report the constitutional violations to their supervisors as

- 11 -

required by their own policies. The fact that numerous officers believed this conduct was acceptable—and that LFUCG undertook no disciplinary or corrective action after the fact—plausibly alleges a systemic failure to train on fundamental 4th Amendment principles and a municipal custom of tolerating constitutional violations.

[Record No. 24 at 3] Those unconstitutional actions, coupled with the lack of intervention or subsequent supervisory review of the event, constitute "specific facts giving rise to a claim of policy or custom of failure to train and supervise so as to prevent or address violations of clearly established constitutional rights of the citizenry." *Id.* at 10 (citing *Wright v. City of Euclid, Ohio*, 962 F.3d 852 (6th Cir. 2020)).

Litteral concedes that he has not pled a pattern of prior instances but suggests that discovery will reveal the systemic failures in training, oversight, and corrective action in this incident and others. *See id.* at 8–9. Finally, he argues that, in addition to the failure to train claim, his Complaint alleges sufficient facts to support *Monell* claims for ratification and a custom of tolerance or acquiescence of federal rights violations. *Id.* at 10–11.

Regarding Litteral's conspiracy claim against LFUCG, he contends that it sought to conceal the violation of his constitutional rights "by refusing to recognize and address the violation of [his] civil rights while acting with knowledge of the actions of the Defendant Officers." [Record No. 24 at 9]

### *Monell* Claims

Ordinarily, Section 1983 creates liability against *persons* who cause deprivations of constitutional rights. However, liability may extend to a governmental entity under § 1983 when its official custom or policy is the moving force behind a violation of constitutional rights. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978).

Where a plaintiff cannot "demonstrate that a written policy exists, he or she 'may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 543 (6th Cir. 2004) (quoting *Monell*, 436 U.S. at 691). To do this, a plaintiff can identify "'(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Guptill v. City of Chattanooga, Tennessee*, 160 F.4th 768, 782 (6th Cir. 2025) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citation omitted)).

**Ratification:** A claim premised on ratification "does not always require proof of a pattern." *White v. Hamilton Cnty. Gov't*, No. 1:19-CV-304, 2023 WL 11979767, at *12 (E.D. Tenn. Mar. 29, 2023) (citing *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013)). That said, "Sixth Circuit precedent makes plain that after-the-fact approval of an investigation that does not itself harm the plaintiff is insufficient to establish *Monell* liability." *Id.* at 13 (collecting cases) (citing *Burgess*, 735 F.3d at 479 (holding that if an after-the-fact approval is a sufficient basis for liability that "would effectively make [the municipality] liable on the basis of *respondeat superior*, which is specifically prohibited by *Monell*")). As the United States Court of Appeals for the Sixth Circuit has affirmed in response to arguments asserting that inadequate investigations constitute ratification, "'under Supreme Court precedent, plaintiffs must show that "action pursuant to official municipal policy" caused their injury. An action cannot be

- 13 -

pursuant to something that has not yet occurred.'"  *See id.* (quoting *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011))).

Litteral argues that his Complaint states a claim for ratification concerning the Lexington Police Department's and LFUCG's lack of recognition and investigation concerning the constitutional violation.  [*See* Record No. 24 at 10.] LFUCG does not directly address his ratification claim but generally asserts that "after-the-fact approval of the search and seizure, which did not itself cause or continue a harm to the Plaintiff, is also insufficient to establish a *Monell* claim."  [*See* Record No. 26 (citing *Burgess*, 735 F.3d at 478–79).]

Litteral's Complaint alleges that he was falsely charged with resisting arrest, even though no officer ever announcing he was under arrest and no resistance on his part.  [Record No. 1 at ¶¶ 1, 18–19, 27] In it, he further claims that the municipality and police department "condoned the actions of Defendants Wells and Curnutte" and worked with the officers to conceal the violation of Litteral's civil rights.  *Id.* at ¶¶ 2, 37, 39.  Finally, Litteral alleges that those entities failed to investigate the use of the taser and subsequent entry or discipline any involved officer.  *Id.* at ¶ 37, 39–40.

As explained previously, Litteral has pled a violation of a constitutional right. Concerning ratification, in addition to LFUCG's failure to carry its burden on Litteral's ratification claim, when the facts and reasonable inferences are construed in the plaintiff's favor, it is reasonable to conclude that Litteral's then-pending charge of resisting arrest was a continuing harm that could have been remedied, by dropping the charge, had there been an investigation following the incident.  Thus, the limitation to ratification claims in *Burgess* does not apply here because the "after-the-fact approval of the search and seizure," evidenced by failing to investigate, *did* purportedly "continue a harm to the Plaintiff."  735 F.3d at 478–79.

- 14 -

**Failure to Train or Supervise:** Succeeding on a failure to train or supervise claim requires a plaintiff to establish: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "There are two ways to support a claim that a failure to train or supervise is the result of a municipality's deliberate indifference." *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 323 (6th Cir. 2023). The first, and most common, is by highlighting a "pattern of similar constitutional violations by untrained employees." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738–39 (6th Cir. 2015).

Alternatively, a plaintiff can establish "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick*, 805 F.3d at 739 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)) (internal quotations omitted). The plaintiff must show "two layers of obviousness: (1) '[i]t must be obvious that the failure to train will lead to certain conduct, *and* it must be obvious (*i.e.*, clearly established) that the conduct will violate constitutional rights.'" *Martinez*, 142 F.4th at 844 (emphasis in original) (quoting *J.H. v. Williamson County*, 951 F.3d 709, 721 (6th Cir. 2020)). "This sort of claim is available only 'in a narrow range of circumstances,' where a federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'" *Helphenstine*, 60 F.4th at 323 (quoting *Brown*, 520 U.S. at 409).

LFUCG argues that Litteral fails to allege a failure to train or supervise claim because he identifies no policy or custom that was the moving force behind his injury. [Record No. 26

- 15 -

at 3–4] It further insists that he fails to plead a pattern of similar civil rights violations, which is necessary to establish the first type of failure to train or supervise claim. *Id.* at 5. As mentioned previously, Litteral concedes that he does not allege a pattern.

For the second type of claim, LFUCG argues that Litteral fails to allege facts showing that this case falls "within the 'narrow range of circumstances' where a single violation might demonstrate a deliberate disregard for an individual's constitutional rights." [Record No. 17 at 5 (quoting *Connick*, 563 U.S. at 63).] But Litteral insists that he has sufficiently pled a policy or custom of failing to train or supervise that demonstrates LFUCG's "'deliberate indifference' to the rights of persons with whom the police come into contact." [Record No. 24 at 3 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).] Specifically, he explains that numerous officers collectively participated in the warrantless entry into his home, failed to intervene in the unlawful tasing, and later failed to report the constitutional violations to their supervisors as required by policy. *Id.* That nearly 19 officers "believed this conduct was acceptable" or benign enough not to report, coupled with LFUCG's decision not to take disciplinary or corrective action following the incident "plausibly alleges a systemic failure to train on fundamental 4th Amendment principles and a municipal custom of tolerating constitutional violations." *Id.* at 3 and 7–8.

LFUCG asserts that Litteral's argument "about the number of officers present at the scene does not transform a single incident into an unconstitutional policy." [Record No. 26 at 5] It argues that his response still fails to identify a "policy that caused the alleged constitutional violation." *Id.* at 3–4. But in making this contention, LFUCG overlooks that a municipality's deliberate indifference in its training or supervision, can itself be an unlawful policy or custom. *Shadrick*, 805 F.3d at 739 ("[T]he failure to provide proper training may

fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.") (citing *Harris*, 489 U.S. at 390).  A plaintiff does not, as LFUCG suggests, need to identify a specific unlawful policy above and beyond a municipality's custom of inadequate training and supervision.

Litteral sufficiently pleads a single-incident *Monell* claim.  The Supreme Court in *City of Canton v. Harris*, opined that this type of claim may lie where city officials arm officers that they know will be arresting "fleeing felons" but decline to train those officers on how to effectuate an arrest in a way that does not violate constitutional rights.  *Shadrick*, 805 F.3d at 739 (citing *Harris*, 489 U.S. at 390 n.10).  Because such a scenario puts constitutional rights at risk and is bound to repeat itself, the municipality's failure to train its officers on how to handle it can reflect "deliberate indifference 'to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.'"  *Id.* (quoting *Brown*, 520 U.S. at 409).

Construing the facts and reasonable inferences in his favor, Litteral sufficiently asserts that LFUCG failed to provide adequate training to the officers on how to handle warrantless arrests when the suspect is within his or her own home and refusing entry.  Much like the hypothetical in the *City of Canton v. Harris*, LFUCG armed its officers with tasers knowing that they may need to be used on a recurrent basis to effectuate arrest but allegedly failed to train its officers on how to do so without violating constitutional rights, particularly when dealing with warrantless entries to homes.  As the plaintiff argues, this was not one rogue officer but numerous officers who witnessed this occurrence but failed to intervene or notify their supervisors that any constitutional violation occurred.  Thus, this claim is sufficiently pled.

- 17 -

Litteral does not, however, state a claim for failure to train or supervise based on a pattern of constitutional violations because he fails to identify prior instances which demonstrate that LFUCG was on notice of its need for more or different training.

**Tolerance or Acquiescence:** A plaintiff may demonstrate a custom of tolerance or acquiescence of federal violations through a custom of inaction. *See Martinez*, 142 F.4th at 843 (citing *Franklin v. Franklin County*, 115 F.4th 461, 472 (6th Cir. 2024)). For this type of claim, the complaint must allege, among other things, "'the existence of a clear and persistent pattern of unconstitutional conduct'" *Id.* (quoting *Franklin*, 115 F.4th at 472). In such a claim, the "plaintiff cannot rely on a single instance to show a pattern of unconstitutional conduct." *Id.*

Like Litteral's ratification claim, LFUCG does not directly address this claim. However, it does argue generally that the plaintiff fails to allege a pattern of unconstitutional conduct. Again, Litteral admits that his Complaint omits any allegation of a pattern. Because alleging "the existence of a clear and persistent pattern of unconstitutional conduct" is necessary for this type of claim, it fails. *Martinez*, 142 F.4th at 843.

### Conspiracy to Conceal Claim

A section 1983 civil conspiracy claims require that "(1) a single plan existed, (2) defendants shared in the general conspiratorial objective to deprive [the plaintiff] of [his or her] constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. *Siefert*, 951 F.3d 753, 767–68 (6th Cir. 2020) (citation modified) (citing *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)). "'[C]onspiracy claims must be pled with some degree of specificity.'" *Id.* at 768 (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)).

- 18 -

For a municipal entity to be liable for conspiracy, a plaintiff "must show that the municipal entity itself had involvement in the conspiracy, not merely rely on a theory of *respondeat superior*." *Robertson v. Breakthrough Towing, LLC*, No. 19-10266, 2022 WL 4292314, at \*17 (E.D. Mich. Sept. 16, 2022) (citing *Bauss v. Plymouth Twp.*, 408 F. Supp. 2d 363, 369 (E.D. Mich. 2005), *aff'd*, 233 F. App'x 490 (6th Cir. 2007)). "A municipality is liable for conspiracy if it, through a policymaker, agrees to combine with others to deprive an individual of [his or] her constitutional rights." *Stone v. Holzberger*, 807 F. Supp. 1325, 1340 (S.D. Ohio 1992), *aff'd*, 23 F.3d 408 (6th Cir. 1994) (citing *Fisher v. City of Cincinnati*, 753 F.Supp. 681, 691 (S.D. Ohio 1990)).

LFUCG argues that dismissal is appropriate for this claim because Litteral fails to allege facts demonstrating that it engaged in a concerted plan with any defendant or identify a policymaker—let alone an overt step that policymaker took to further the conspiracy. [Record Nos. 17 at 6 and 26 at 6] Litteral asserts in response that the conspiratorial plan included LFUCG because it failed "to acknowledge or disclose the incident and violations committed by the officers" and failed to "render or consider disciplinary action, including remedial training or discipline of the officers at the scene." [Record No. 24 at 2]

Litteral asserts that LFUCG's "supervisory employees" and "agents in the Lexington Police Department . . . engaged in a conspiracy with . . . Defendant officers on the scene of Plaintiff's arrest to conceal the violation of Plaintiff's constitutional rights." [Record No. 1 ¶¶ 2, 39–40] While he may plead a conspiratorial plan to conceal, he fails to identify the policymaker who made an agreement with the officers to deny him of his constitutional rights. *Siefert*, 951 F.3d at 767–68; *Stone*, 807 F. Supp. at 1340. Nor does he identify which constitutional right the defendants intended to deprive him of in their plan to conceal. *See id.*

(requiring that the defendants' conspiratorial objective be to deprive the plaintiff of his constitutional rights). While Litteral may have a hunch that a conspiracy existed, his Complaint lacks the requisite specificity required in pleading that claim against LFUCG. *Siefert*, 951 F.3d at 768.

### Motion to Amend Complaint

Litteral's response includes a request to amend his Complaint within ten days to set "forth in greater detail the [policies or procedural] deficiencies apparent on the part of" LFUCG. [Record No. 24 at 2–3] However, he failed to provide an amended complaint for the Court's consideration. *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (citing *Shillman v. United States*, 221 F.3d 1336, 2000 WL 923761, at *6 (6th Cir. 2000) ("Normally a party seeking an amendment should attach a copy of the amended complaint."). And while courts are to "freely give leave" to amend, "that liberal policy does not apply to the plaintiff['s] one-sentence request. A 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant[s'] motion to dismiss is . . . not a motion to amend.'" *Id.* (quoting *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010)).

Further, Litteral's claims subject to dismissal (*Monell* claim for failure to train or supervise based on a pattern of similar violations, *Monell* claim for tolerance or acquiescence, and Section 1983 conspiracy claim) are not inadequate because they fail to articulate a policy or procedural deficiency attributable to LFUCG. Instead, those claims fail to allege a pattern of unconstitutional conduct such that LFUCG can be said to have had notice of prior issues. And for the conspiracy claim, Litteral does not identify any policymaker who made an agreement with the officers to deny him of his constitutional rights or which constitutional

right the defendants intended to deprive him of in their plan to conceal the prior violation. Therefore, allowing leave to amend to articulate a policy or procedure would be futile in this instance.

## IV.

Being sufficiently advised, it is hereby **ORDERED** as follows:

1.    Defendants Scott Evely, Edwin Williams, John Toler, Caleb Croney, Logan Anderson, Brandon Helm, Tyler Farrell, Shannon Penegor, Alexander May, Steven Wiggins, Patrick Murray, Christopher Beard, James McCullough, Connor Sands, Morgan Kelsey, Daniel Christian, and Gregory Gerton's renewed motion to dismiss [Record No. 18] is **DENIED**.

Qualified immunity for those defendants for the Section 1983 claims and qualified official immunity for the Kentucky assault and battery claims likewise are **DENIED**.

2.    Defendant Lexington Fayette Urban County Government's renewed motion to dismiss [Record No. 17] is **GRANTED** with respect to the *Monell* claim for failure to train or supervise based on a pattern of similar violations, the *Monell* claim for tolerance or acquiescence, the Section 1983 conspiracy claim, and the state-law assault and battery claim.

However, the motion [Record No. 17] is **DENIED** with respect to the *Monell* claim for failure to train or supervise based on a single incident and the *Monell* claim for ratification.

3.    Plaintiff Melvin Litteral's construed motion for leave to amend his Complaint [Record No. 24] is **DENIED**.

Dated:  April 27, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky